May it please the Court, I'm Mark Stern for the Federal Defendants. The issues in this case have narrowed considerably during the pendency of this appeal. The Court's October 30th decision in the off the table. And the Court has also twice addressed the scope of Section 1373, and in both cases it adopted the basically the same reading as the District Court did in this case, saying that it applied only to sort of strictly question of legal classification and rejected the government's view of what 1373 encompassed. And in that context and with the Court's permission, the issues that I would like to focus on are whether the District Court erred in declaring 1373 to be facially unconstitutional and whether the Court erred in issuing an injunction that applies to non-parties nationwide. And obviously we think that the Court erred in both respects. There was even under the, I'm happy to take up any part of the Court's actual controversy, but the particular meaning of 1373 is not on the table anymore. But leaving that aside, the District Court held that 1373 as a statutory matter was not an applicable Federal law that the Department could expect a jurisdiction to certify to. And we think that the District Court's understanding of 1373 was incorrect. We don't think that it's a statute that simply applies. We don't think that the only things that are applicable are other statutes that govern, that are sort of geared precisely towards requirements relating to grants. Our view has always been that if a city or state is getting a law enforcement grant and there is a statute that is applicable to the program that's getting that grant, that the government can ask that jurisdiction to certify. If we disagree with you on that statutory argument, do we need to reach the constitutional question? No, absolutely not, Your Honor. I mean, that's the — we think, as we pointed out in our brief, that if the Court were to agree, obviously we'd disagree. But if the Court were to agree with the District Court on that point, that really is the end of the matter. That means that as a statutory matter, 1373 is just taken off the table in this case. And there's no possible basis at that point for going on to determine whether it would fail as a condition on spending, as it is in this particular state, or whether it would fail as a stand-alone statute and is facially unconstitutional. Could I ask you a preliminary question about your interpretation of applicable in 101-53? The interpretation that you're defending, was that adopted by the Assistant Attorney General in the exercise of delegated authority to implement the statute? Yes. I mean, that's certainly what we understand it to be, yes. So why does your brief not argue that it's entitled to deference under Chevron? I guess we don't think that this was promulgated in a way that would be sort of merit Chevron deference. It was sort of has none of the particulars of, you know, sort of either notice and comment or any kind of sort of public solicitation of view, nor does it have the kind of explanation that we would typically expect to see if we wanted to ask the Court for Chevron deference. Now, we do think that as the sort of department that's charged with implementing the grants, the Court should have good reason before it sets aside the Attorney General's understanding of that statute. And again, we disagree with what the district court held. So the statute, I think it's 101-55, does provide rulemaking authority, but you didn't, or the AIG didn't exercise that authority in promulgating this? Yes, that's correct, Your Honor. There was no rulemaking done in this case. And 1373 itself, what agency would have authority, or to what agency would that statute's interpretation be committed? None. None. No. Nobody enforces 1373, to our understanding. There's, we've never claimed Blick deference to our interpretation of 1373. And whether we did or not, the Court has rejected it twice. So I got into this case, I looked at all these issues, I bury myself in them, and I discover other people have done the heavy lifting. So here we are. Yes, Your Honor. Let me make sure I understand what you're identifying when you speak to the district court's determination, I guess declaration, that 1373 was unconstitutional. There are multiple arguments there, most of which I think we probably don't have to take up, both because this Court has interpreted the statute and because the district court's interpretation, as I understand it, is not based on the understanding that this Court has articulated of 1373. No, that is correct. The Court did, however, go, the Court could and should, having concluded that it's a statutory matter, that it did not believe that this was an applicable federal law, the Court really should have stopped there, but it did go on to address various constitutional questions, including both 10th Amendment and standalone, like, addressed whether this was commandeering within the meaning of New York and Prince, and we think that both we think that the Court was really wrong in all of those respects, and that there was no reason to get, but more important, from this Court's perspective this morning, if the Court were to agree with that first holding of the district court, that it's not an applicable federal law as a statutory matter, there's absolutely no reason to go further in doing so. It really turned the canon of constitutional avoidance on its head. Well, I don't think we need to criticize what the district court did, since it was trying to deal in a situation with dispatch to deal with multiple arguments, but at this point, I take it your position is that if we're satisfied with checking off the first box, there's no reason to peer into all the others. We can just set those aside. That's correct, Your Honor. That gives the plaintiffs all relief that they could ask for, which segues into the second issue that I'd like to address, which is the scope of the injunction. The district court's injunction, if it's affirmed with respect to the actual plaintiffs, gives them all the relief that they could possibly ask for, and this Court has several times recognized that while in some cases where you cannot give adequate relief to the named plaintiffs, it may be necessary to do a broader injunction, but this clearly is not one of those cases, and the problems with doing this kind of nationwide injunction, we think, are pretty clear. It means that you don't get the ability to have a circuit conflict. It means that the first district court or really any district court to issue a nationwide injunction effectively precludes all the other courts in the country from considering the question, and effectively in a case like this, you know, when it doesn't necessarily have to be against the Federal Government, but when it is, effectively the Federal Government has to win each and every lawsuit, sort of like in all the circuits, whereas a plaintiff only needs to win once. It makes no sense. This Court has made clear that it's not appropriate where it's not necessary, and we think it's clearly not necessary in this case, and that the plaintiffs have at no point demonstrated why an injunction that broad is necessary to address their asserted injuries. I'm happy to answer any other questions that the Court may have. I think at this point, none. You've saved a lot of time, so you can use that in rebuttal to the extended. Thank you, Your Honor. Good morning, and may it please the Court, Aileen McGrath for the City and County of San Francisco. I'm dividing my time with Mr. Klein, counsel for the State of California, so I will keep an eye on the clock. And I intend to begin. Dividing at 50-50? Right. So 10 minutes per side, Your Honor. And I intend to begin by addressing why the Department lacks statutory authority to impose the 1373 condition, and Mr. Klein will address any remaining questions on that topic or on the Tenth Amendment issue, although we will each address the nationwide injunction issues that my friend on the other side brought up. We agree with the Department that there is a narrow way for this Court to resolve this case, and that is to affirm the district court's determination that the Department lacks statutory authority to impose the 1373 condition. Bernjag applicants must certify that they will comply with all provisions of the Bernjag statute itself and all other applicable Federal laws. The phrase, all other applicable Federal laws, embraces laws about grants, laws about grant making and grant administration, and laws that by their terms apply to Bernjag grantees. It does not embrace any and all other laws in the U.S. Code, and this is clear Well, do we even have to reach that issue? I mean, in light of this Court's decision in U.S. v. California, we've said, but California enacted, that's perfectly okay under 1373. Right, Judge Clifton. We do agree, Judge Clifton, that it's not strictly necessary in order to give San Francisco and California their entitlement to their Bernjag grants for the Court to reach the substantive issues in this case, but we think that it should anyway. Why? If box number one makes you a winner, why should we have to peer into box number two? Because the Department has continued to invoke this very same source of authority to impose this very Section 1373 condition on the 2018 and 2019 Bernjag grant cycles. Except you got a Ninth Circuit decision that says you comply with 1373. That will give us the relief that we need in this case, and that is we agree one possible way for the Court to decide the issue here. Our position is that we think it's efficient, given that the issue has been briefed and fully teed up, for the Court to decide the statutory question here in light of its ongoing importance, frankly, to all the parties. But if this Court wants to take the narrowest possible path to affirming Well, I'm not sure. What's the ongoing issue? I mean, if the Ninth Circuit has said that 1373's requirements are satisfied, at least as long as you're within the Ninth Circuit, what's the issue that would be teed up in other cases that we might not answer here? The Department has applied conditions not only that relate to 1373, but also to various other immigration-related statutes. So whether those external statutes are other applicable federal laws, we think is an ongoing issue. But we agree here that a narrow result is all that's necessary to protect our grant funding. And so if that's all that the Court is inclined to do, that will give us the relief that we need in this case. This case may pose the question of whether 1373 falls within other applicable. I guess you're telling me there are other statutes that arguably fall within that, but I'm not sure how we can speak to those if we don't even know what they are. That's true, but we think that the Court can decide the threshold question of whether other applicable federal laws embraces laws that do not themselves apply to federal grants. And an answer to that question would resolve other disputes in other cases. What other statutes? I mean, can you give me an example of another statute that arguably falls within other applicable that we could answer? I don't think it falls within other applicable. But one example is the Department has taken the position that 8 U.S.C. Section 1324, which relates to harboring unlawful immigrants, applies to future burn-jag grants. Like 1373, 1324 contains no reference that applies it to burn-jag grantees in particular or to federal grantees in general. And so an answer to the question here about whether all other applicable federal laws includes laws like that would provide ongoing guidance for the parties. I don't mean to resist so heavily. I understand your position now. I'm still kind of adrift on why. I look into a different box. But I understand why you're interested if you could get an answer. If you could get the answer you'd like, you'd like to get that answer. Whether you could get the answer you'd like may be another question. Right. So perhaps I can try to convince you on that point. Here, every aspect of the statutory context, the statutory structure, all of the canons of statutory construction point in a uniform direction. And that is towards an interpretation of all other applicable federal laws that relates to the grant. Each and every one of the surrounding provisions in 101-53 relates to the grant itself and grant administration. It is directed to San Francisco's conduct only insofar as San Francisco is performing and administering that grant. And so in light of that context, the all other applicable laws language must likewise be interpreted as bringing in those laws that likewise apply to the grant and to San Francisco in its capacity as a grantee. And it's also important to note that this is consistent. As I hear you making your argument, we don't necessarily need to address any other statutes than those that are at issue here. But the rationale that we use may affect the ongoing rationales as to others. That's exactly right, Judge Fletcher. I got it. So it just depends on the rationale on which we agree with you. That's right. And the district court's rationale here, if affirmed by this court, would resolve these ongoing statutory questions. I'd also just like to emphasize that the district court's interpretation and our position here is consistent with the department's own longstanding interpretation of what applicable laws mean in the burn-jag context. And this is clear from the legislative history. At the time that that phrase was added to the predecessor to the JAG grant, the department itself understood applicable laws to mean laws that are applicable to the grant, the very laws the district court identified. And that was the department's consistent interpretation for nearly 40 years. This is all laid out in detail in New York State's amicus brief. It's only in the past three years that the department claims to have uncovered in this long, extant statutory language the authority that it now claims to invoke. And so here we think that the district court reached a correct interpretation of this statute and one that the department itself, notwithstanding its contrary arguments now, has embraced. I'd like to very briefly touch on the topic of nationwide injunction, the nationwide scope of the injunction here, unless the court has further questions on the applicable laws statutory question. The department asked this court to impose a categorical rule that would preclude district courts from issuing injunctions that go beyond what is necessary to give relief to the named plaintiffs in the case. As we make clear in our brief, there is no constitutional foundation for that limitation, and there is no basis in this court's existing case law that supports that limitation. While we agree that this court has written extensively on the topic of nationwide injunctions over the past couple of years, at bottom we believe that the court has never cabined the district court's discretion to fashion the scope of an injunction as it sees fit once it has identified a constitutional or statutory violation. I mean, we may not need a categorical rule against it, but I'm struggling to see why it's appropriate here. I mean, suppose that Cleveland wants to adopt policies similar to yours. I mean, why do you care whether they're going to be eligible for a grant when they do that? Well, the district court found that it cared for two reasons. One is the district court found that this was in part an APA case. California has an APA claim. The APA allows courts to set aside unlawful agency actions in their entirety. And so in one respect, that's exactly what the district court did by enjoining the other applicants. And second, the court looked. It doesn't answer the question why you care. I don't care. If the rule is that we must have some interest and be injured in some way by the harm to other jurisdictions, then we can see that we can't show that in this case. There's no harm to other jurisdictions that harms us unless it is also enjoined. Yeah. Even assuming that you might have the right to ask for a nationwide injunction in the absence of any particular interest that you might have to it. So I'll assume, for purposes of my question, that a party that has no particular interest in the nationwide nonetheless can ask for it. There's the argument that, you know, sometimes courts make mistakes, even the Ninth Circuit. And if... I'm shocked. Shocked. Me too. Well, on the hypothetical that we might make a mistake, if there's a nationwide injunction, isn't the government right to say that that forecloses other circuits from going forward, forecloses circuit splits, forecloses all the mechanisms we have for airing different judges' views on something that might be controverted, and then going to the Supreme Court with a circuit split? How do you respond to that? We agree that that is an important interest. And the district court agreed here, too. But he found that other circuit stances in the case outweighed that need for percolation. And here, I would submit that any concerns about percolation are not likely to manifest, given that this is the fourth court of appeals to have considered this issue, notwithstanding the fact that a nationwide injunction was in place out of Chicago for quite some time. So while there may be concerns about that in some context here, percolation has happened. You mean the government's going to ignore the nationwide injunction and go forward anyway so that these suits keep going forward? The state and local governments, we pursued our lawsuit, even while a nationwide injunction protected us from imminent harm. Yes. If I may, I'm going to turn it over to Mr. Klein. Unless the Court has further questions for me. May it please the Court, I'm Joshua Klein on behalf of the State of California. I want to address a few additional points on the meaning of applicable laws. Also, I want to address California's APA claim that the condition here was arbitrary and capricious, regardless of the meaning of applicable laws. And then I want to address the Tenth Amendment claim, I guess, to the extent that the Court believes it's at issue in this case, given the other relief. Are you going to say anything about nationwide injunctions? I'm happy to answer any questions on them. I just wonder if you had anything to add. We're on that topic, and you might add your comments now. Otherwise, I'm happy for you to go on to whatever else. We're in agreement with the City of San Francisco. I mean, the subject has received a lot of debate recently, including after the district court decision here. It's absolutely clear that California, to receive complete relief, needs and it needs injunctions that cover California and California's political subdivisions, which are a part of the State. We think the district court acted within its discretion here, given the circumstances of this case, and particularly given typical APA remedies and the evidence in the record as to identical legal issues causing harm to other jurisdictions. We understand that's an extremely close question, as the district court did in staying its own decision here. And so — I just want to be clear. You talk about the State of California needs based on the position the Department of Justice has taken in front of us. What else does the State of California need? Well, so going to the — on the statutory question to begin with, we agree with my friend from San Francisco that the interpretation of applicable laws, even if it would not — even if it's not directly required to be settled here for the fiscal year 2017 funding for the grants that were — are directly at issue in this case, are going to be at issue in upcoming fiscal year grants. And also for the State, it's an issue — How? How? Given what the government has acknowledged with regard to prior decisions of this court that are going to be binding, at least within the State of California and also the eight other states and two territories, what more do you need? Because as — because with respect to the future grants, as has been noted, the Department is now saying applicable laws includes not just 1373, which this Court has narrowed the scope, the interpretation of or explained the interpretation of, but other statutes as well, which are not applicable laws because they do not relate to grant conditions. In addition, California, of course, has a lot of jurisdictions, and the particular declaratory judgment as to California's statutes in this case, which I take it the United States is not now contesting, obviously, we have a lot of jurisdictions that have other laws of their own. And so the broader ruling is certainly of use to us, although it's not strictly — But Santa Cruz has its own ordinance. Our decision on this case isn't going to speak to whatever Santa Cruz might have adopted for itself. I understand that and take the point, Your Honor. I do want to address the APA cause of action for California. Whatever the JAG statute requires, the APA forbids the defendants from requiring a certification from choosing 1373 from among its apparently boundless universe of applicable laws unless that decision makes — meets the minimal standards of reasoned decision-making. And we know that's in addition to statutory requirements. We know that from City of L.A. 1, which engaged in a separate requirement — a separate analysis of arbitrary and capricious APA action. And we know that from basic administrative law principles. And the defendants failed that test here for three reasons. First, their briefs make notably no attempt to justify the certification requirement on the record. There is not a single record citation. And as my friend said with respect to Chevron, it seems, you know, that there was no explanation of their statutory — admittedly, no explanation of their statutory interpretation. There's no explanation in the administrative record, and they cite to none for their decision to impose the certification requirement. The most they rely on is — Well, that makes me wonder then what a statement by us in this case would — how well it would speak to an effort to define through a process later for later years. I mean, if the Attorney General comes out and says, I define applicable as including — wrote down the number, 1324, just to cite as an example. Well, wouldn't we have to revisit that question in the context of what his statement said? Because Brand X has told us for many years now, the fact that our court interprets something doesn't mean that we don't have to revisit it and give deference where deference is due. I come right back to the question of how well can we speak to the question you're trying to get us to answer? Your Honor, I think there are two parts to the answer. First, the United States has said that they're not seeking deference here, so I don't think this is a statutory interpretation question. It's a question of whether they're acting arbitrarily and capriciously. But if they seek deference in a future case because the Attorney General has gone through a process where they think they can lay claim to deference, how would our decision help? Well, and so I think that the most it would say was that if the record were the same, then the same answer would apply. I want to cover the Tenth Amendment issue as well because I recognize that this is an issue the court does not need to reach strictly to answer the question of whether the fiscal year 2017 grants had to be given despite this, despite the certification condition. But if the court does reach the Tenth Amendment issue, it should be absolutely clear that Prince and Murphy compel the conclusion that Section 1373 is unconstitutional. It regulates State and local governments as governments. It doesn't prevent the State from regulating, from imposing parties on private requirements on private persons that conflict with Federal requirements. Instead, it enlists State resources as agents of Federal regulation. It eliminates the State's authority to choose whether its officers should serve as enforcers of Federal law on State time using State resources and using the information they only have access to in their role as State officers. And the defendant's contrary arguments are flatly foreclosed by Prince and Murphy. The defendants say the INA as a whole regulates private actors. That was true equally of the statutes in Prince and Murphy. The 18 U.S. Code 922 imposes substantive requirements and restrictions on gun purchase, sale, and possession. The whole reason for the background check there was to serve, was to provide extra enforcement of those private party regulations. It doesn't matter. The point is that the Federal government can't remove from State officers the choice of, or rather from the State, the choice of whether to participate. In Murphy, the statute subsection 1 regulated State, subsection 2 regulated the private parties. The Court said those are closely related, but the only one that mattered was the challenged one that regulated the State. And finally, there's no – it's no help that, as the defendants say, the statute doesn't require State officers to do anything. It just prohibits the State from controlling in any way the officers' independent choices. After Murphy, prohibition and an affirmative command are on the same footing, and the State employee acts only as a State officer. Well, are our cases tied to a grant? Is there any doubt that the Federal government could condition receipt of a grant on the State doing certain things? A condition, a spending condition, is subject only to the Spending Clause restrictions, not the Tenth Amendment restrictions. But with respect, the State has said – the Federal government has said that it's an applicable law even if, as written, it's unconstitutional. And that does – so the unconstitutional – that's a bizarre interpretation. It would make the laws that were struck down in Prince and Murphy a basis for withholding JAG funds. But they could take all the language which was being disputed in 1373 and simply plunk that in as a condition to receipt of a grant. If they do so clearly and in a manner that's germane and, if I may continue the answer, and substantially related under Dole to the – limited to the subject matter of the grant, and if they have statutory authorization. And the last of those is clearly lacking here, and the other two, for reasons the panel has explained, are lacking as well. Thank you. Okay. Thank you. Any rebuttal? Thank you, Your Honor. I'll be very brief. I'm happy to address any of the assertions about the Tenth Amendment. We think that they're clearly not presented here. I would just note that the question that there's nothing clearly established about whether a statute like 1373, particularly under the interpretation this court has accorded to it, would violate the Tenth Amendment as a facial matter and point the court to Justice O'Connor's concurrence in Prince where she emphasized that the court had not, in that case, addressed or cast doubt on a information-sharing statute such as the missing child statute, which requires states and localities to make reports to the Attorney General. And reaching a question like that here in the absence at this point of any need to do so would be extraordinary, and we think it would really – far from being foreclosed, we don't think there's anything that the Supreme Court has said to date, certainly not in Murphy, that calls any of that into question. And, I mean, there are various things that were said that we don't think are correct. I'll just note that the friends have quite agreed that there is nothing about a nationwide injunction that is necessary to remedy their injuries under that circumstance. We also think there could be no basis for a nationwide injunction in this case, and friends are asking this court to issue a ruling that sweeps as broadly as possible, and if the court were to rule against us, we think that the normal rule would be to issue an injunction or a decision that addresses the particular questions that are presented here that have been the subject of full briefing and not to attempt to address issues that may arise elsewhere, may not arise elsewhere, but certainly aren't the subject of the briefing in this case.  Thank you very much, Charles. Thank both sides for their helpful arguments. City and County of San Francisco v. Barr, submitted for decision.
judges: W. Fletcher, Clifton, Miller